**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

*In re* Application of:

The REPULIC OF ECUADOR and
DR. DIEGO GARCIA CARRION,
the Attorney General of the
Republic of Ecuador,

Applicants, CASE NO. 4:11mc73-RH/WCS

For the issuance of a subpoena under
28 U.S.C. § 1782(a) for the taking of a
deposition and production of documents by
DR. ROBERT HINCHEE,
for use in a foreign proceeding,

Respondent,

CHEVRON CORPORATION,

Intervenor-Respondent.

_________________________________________/

**ORDER COMPELLING DISCOVERY**

This proceeding is a small part of an expansive, long-running international dispute. The principal adversaries are the Republic of Ecuador ("the Republic"),

on one side, and on the other, Chevron Corporation—as successor to Texaco Petroleum Company—and Dr. Robert Hinchee.[1]

Dr. Hinchee was a testifying expert for Chevron in earlier litigation in Ecuador. He resides in this district. In connection with an international arbitration proceeding that is now pending, the Republic served a subpoena *duces tecum* requiring Dr. Hinchee to produce a great number of documents. Chevron intervened in support of Dr. Hinchee.

Chevron and Dr. Hinchee assert that many of the requested documents were privileged or protected from disclosure by the work-product doctrine. They provided a privilege log. The Republic moved for *in camera* review of the withheld documents. The Republic also moved for *in camera* review of 192 documents that Chevron says are privileged but that it inadvertently produced.

I ordered the *in camera* filing of 40 documents selected by the Republic—20 from the privilege log and 20 that were inadvertently produced. Chevron and Dr. Hinchee filed the documents. This order compels production of 39 of the 40 documents. The order directs Chevron and Dr. Hinchee to produce additional documents based on the same parameters set out in this order and to file *in camera* any for which it continues to claim privilege.

[1] For convenience, this order uses "Chevron" to refer to both Texaco and Chevron—whichever is appropriate in context. For present purposes, the distinction between the entities makes no difference.

## I. The Scope of the Discovery Dispute

At the outset, it perhaps bears noting that most of the 40 documents are unlikely to affect the underlying arbitration. Many are trivial. An example is an email arranging transportation from an airport. Others consist of or include Dr. Hinchee's notes, but most are cryptic.

In many cases a court would properly limit the production of documents like some of these on the ground that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, though, the amount in controversy dwarfs the expense of even the broadest discovery. Without knowing more about the underlying arbitration, one cannot say that this discovery is excessive. And in any event, Chevron and Dr. Hinchee have asserted privilege and work-product objections, not objections on other grounds.

## II. The Categories of Documents at Issue

The 40 *in camera* documents may be divided into three categories, and a fourth category should be part of the discussion, even though none of these 40 falls into this category.

The first category consists of a single document labeled "Executive Summary" that Chevron says was drafted for inclusion in an expert report. ECF No. 61-1 at 43-46 (REH-PL-0615). The assertion appears to be correct. This document is protected work product.

The second category consists of notes on matters of substance made by Dr. Hinchee apparently for his own use. Some of the notes are separate documents. Some are handwritten notes on other materials that were inadvertently produced without redacting the notes. Chevron asserts that at least some of the separate documents were draft reports, but nothing supports the assertion; at most, the notes appear to compile information that might later be used in preparing to testify or in compiling a report or might never be used at all. In sum, none of the documents in this category was prepared as a communication to an attorney—or member of an attorney's staff or consulting expert—or as part of a draft report. The documents are not privileged or protected by the work-product doctrine.

The third category consists of communications between Dr. Hinchee and one or more individuals who were neither attorneys nor members of an attorney's staff. Some communications were with experts who testified in the underlying litigation or members of their staffs. Some communications were with Chevron nonattorney employees, including Sara McMillan. Many of the communications dealt with logistical matters such as when a flight would arrive or when an expert would have

time to work on the case. The documents are not privileged or protected by the work-product doctrine. And this is so even if an attorney or consulting expert, or a member of either's staff, was incidentally copied on a communication. *See*, *e.g.*, ECF No. 60-8 at 98 (REH-RL-00212).

The fourth category consists of communications between Dr. Hinchee or a staff member and a Chevron attorney or member of the attorney's staff. Any such document would be protected by the work-product doctrine. And this would be so even if another expert—or member of the expert's staff—was incidentally copied on the communication. But none of the 40 *in camera* documents comes within this category.

## III. Privilege and Work-Product Analysis

The 2010 amendments to Federal Rule of Civil Procedure 26 explicitly address work-product protection regarding testifying experts. Dr. Hinchee was such an expert in the underlying litigation. But Dr. Hinchee will not testify in the arbitration proceeding.

For work-product purposes, Dr. Hinchee should be treated as a testifying expert. He was hired to testify in the underlying—closely related—litigation, and he did testify. No good reason exists to afford him greater protection now. But there also is no good reason to afford him less protection. Under these circumstances, the scope of the privilege and work-product protection available to

Chevron and Dr. Hinchee is exactly the same as it would be if Dr. Hinchee expected to testify in the arbitration proceeding.

The 2010 amendments explicitly provide protection for two categories of documents. First, work-product protection extends to "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Fed. R. Civ. P. 26(b)(4)(B). As set out above, the "executive summary" comes within this category. None of the other documents in this set of 40 is a draft of a report or disclosure.

Second, for an expert required to provide a 26(a)(2) report—Dr. Hinchee was an expert of that kind in the underlying litigation—the 2010 amendments provide work-product protection for

> communications between the party's attorney and [the expert], regardless of the form of the communications, except to the extent that the communications:
>
> > (i) relate to compensation for the expert's study or testimony;
> >
> > (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
> >
> > (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C).

For purposes of this rule, an attorney may communicate through others in the office—another attorney, a paralegal, or another staff member—as may an expert. Communications between Chevron's attorneys or staff members and Dr. Hinchee or his staff members are protected—even if other experts or their staff members participated in or incidentally received copies of the communications—unless the communications come within the three exceptions set out in the rule. But a qualification is in order: sending a copy of an unprotected communication to an attorney—that is, incidentally copying an attorney on a communication between others—does not change the communication to a protected one. All of this is set out as part of the analysis and for Chevron's guidance in screening additional documents as required by this order. But none of the 40 documents were communications between an attorney or staff member, on the one hand, and Dr. Hinchee or a staff member, on the other.

That brings us to materials *not* described in the 2010 amendments. The amendments do not speak to an expert's own notes that are not sent to an attorney and are not part of a draft report. And the amendments do not speak to an expert's communications only with other testifying experts, not also with attorneys. The better view is that under the rules as they now stand, these materials are not protected.

Two unassailable points support this conclusion. First, before the 2010 amendments, the attorney-client privilege and work-product doctrine did not protect a testifying expert's own notes or communications with another testifying expert. This apparently was the widespread view. *See, e.g.*, *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 750-51 (7th Cir. 2005) (finding that a testifying expert's notes from interviews he conducted with a party's employees were subject to discovery); *Sec. & Exch. Comm'n v. Reyes*, 2007 WL 963422, *1 (N.D. Cal. Mar. 30, 2007) ("When experts serve as testifying witnesses, the discovery rules generally require the materials reviewed *or generated by them* to be disclosed . . . ." (emphasis added)); *Martin ex rel.Mulich v. Intex Recreational Corp.*, 1994 WL 593987, *1 (D. Kan. Oct. 27, 1994) (stating that Rule 26 "essentially makes the opinions of an expert witness discoverable, along with whatever documents and other materials he may have used in the course of preparing and forming his expert opinions"). Chevron and Dr. Hinchee have cited no contrary authority.

Second, the 2010 amendments clearly specify the materials they protect—draft reports and communications between the expert and the party's attorney—and do not mention the expert's own notes or communications with other testifying experts. The care with which rules amendments are crafted and reviewed makes it virtually impossible that this was an oversight.

To be sure, the concerns that led to the 2010 amendments also would support further broadening work-product protection. The Advisory Committee on the Federal Rules of Civil Procedure noted that an attorney sometimes hires two sets of experts—one to consult and one to testify—in order to avoid unnecessary discovery and intrusions on the attorney's mental processes. Fed. R. Civ. P. 26 advisory committee's note (2010 Amendments). And the Committee noted that "experts adopt strategies that protect against discovery but also interfere with their work." *Id*. After the amendments, if the expert's notes are discoverable, an attorney may still choose to hire two sets of experts, thus avoiding undesirable discovery, and a testifying expert may choose not to take notes, thus protecting against discovery but also interfering with the expert's work.

Still, the Committee did *not* conclude that these concerns warranted a greater expansion of work-product protection. A court could conclude on its own that greater protection is warranted; the rules do not preclude a court from expanding the common-law work-product protection beyond that explicitly recognized in the rules. *Cf*. Fed. R. Evid. 501 (providing that except in a case in which state law supplies the rule of decision, the "common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court"). But the better view is that a

court should not expand the work-product protection in this area at this time beyond the protection long recognized and more recently expanded through the rules process.

Most courts that have addressed the issue since the 2010 amendments have agreed with this result. *See, e.g., In re Republic of Ecuador (Kelsh)*, 280 F.R.D. 506 (N.D. Cal. 2012); *In re Republic of Ecuador (Mackay),* No. 1:12-mc-00008 GSA, 2012 WL 487158 (E.D. Cal. Feb. 14, 2012); *Republic of Ecuador v. Bjorkman*, No. 11-cv-01470-WYD-MEH, 2012 WL 12755 (D. Co. Jan. 4, 2012), *and aff'd and adopted by* DE-87 (Oct. 4, 2012). At least one court has taken a different tack, but that court improperly equated the required content of an expert's Rule 26(a)(2) report with the permissible scope of discovery. *See Nat'l W. Life Ins. Co. v. W. Nat'l Life Ins. Co.*, No. A-09-CA-711 LY, 2011 WL 840976 (W.D. Tex. Mar. 3, 2011). Just because information need not be included in the report does not mean the information is protected by the work-product doctrine or otherwise cannot be discovered.

## IV. Sanctions

Under Federal Rule of Civil Procedure 37(a)(5)(A) and (B), the court "must" order the party that loses a discovery motion or the party's attorney or both to pay the opposing party's attorney's fees, unless the party filed the motion without attempting in good faith to obtain the discovery without court action, or the party's

position was "substantially justified," or "other circumstances make an award of expenses unjust." Unless these conditions are met, an award of sanctions is "mandatory." *Devaney v. Cont'l Am. Ins. Co.*, 989 F. 2d 1154, 1162 (11th Cir. 1993) (citing *Merritt v. Int'l Bhd. of Boilermakers*, 649 F. 2d 1013, 1018 (5th Cir. Unit A June 1981)). A position is "substantially justified" if it results from a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations, quotation marks, and brackets omitted); *Devaney*, 989 F.2d at 1163.

Here the Republic has prevailed on the most substantial issues. But the issues were not free of doubt. The import of the 2010 amendments is not yet well settled. This was a genuine dispute on which reasonable people could differ. No sanctions will be imposed.

## V. Conclusion

For the reasons set out in this order, Chevron and Dr. Hinchee must produce to the Republic all documents on the privilege log or inadvertently produced that were not draft reports or communications between Chevron's attorneys or their staff members and Dr. Hinchee or his staff members. Accordingly,

IT IS ORDERED:

1. By November 23, 2012, Chevron and Dr. Hinchee must produce to the Republic, from the *in camera* submission, these documents:

REH-PL-0027
REH-PL-0154
REH-PL-0161
REH-PL-0194
REH-PL-0232
REH-PL-0237
REH-PL-0239
REH-PL-0253
REH-PL-0275
REH-PL-0276
REH-PL-0318
REH-PL-0352
REH-PL-0362
REH-PL-0457
REH-PL-0497
REH-PL-0625
REH-PL-0708
REH-PL-0760
REH-PL-0778
REH-RL-00029
REH-RL-00040
REH-RL-00043
REH-RL-00062
REH-RL-00064
REH-RL-00072
REH-RL-00073
REH-RL-00079
REH-RL-00088
REH-RL-00089
REH-RL-00120
REH-RL-00134
REH-RL-00135
REH-RL-00136
REH-RL-00158
REH-RL-00162
REH-RL-00175
REH-RL-00191
REH-RL-00212
REH-RL-00213.

2. By December 3, 2012, Chevron and Dr. Hinchee must produce to the Republic all other documents—on the privilege log or inadvertently produced—that were not draft reports or communications between Chevron's attorneys or their staff members and Dr. Hinchee or his staff members.

3. By December 7, 2012, Chevron and Dr. Hinchee must file for *in camera* review any document—on the privilege log or inadvertently produced—for which they still claim privilege or work-product protection.

SO ORDERED on November 2, 2012.

s/Robert L. Hinkle
United States District Judge